## Oswald v. Raver et ux.

*Frederick J. Templeton,* for plaintiff.
*Myers & Myers,* for defendants.

REESE, P. J., June 2, 1942.—The bill in equity filed by plaintiff herein avers, in substance, that defendants, being the owners of property in Silver Spring Township, in this county, executed a written agreement by which they leased the property to Jacob E. Trimmer for a period of two years ending March 31, 1942. The lease contained an option to purchase the premises for $7,500 on or before April 1, 1942. During the year 1941 the Department of Highways relocated and improved the highway on which the property abuts, and by the exercise of eminent domain took 26,675 square feet of the premises and changed the grade of the remaining portion. Subsequently, during the same year, the Commonwealth paid to defendants, as damages for the taking, the sum of $2,000. Thereafter, in January 1942, the tenant-optionee advised the lessor-optionors of his intention to exercise the option and demanded that he be given a credit on the purchase price for the amount so received from the Commonwealth, less any portion thereof expended by the optionors in restoring the grade. This the optionors refused to do, and demanded payment of the full option price as a prerequisite to the execution and delivery of a deed. On February 4, 1942, the optionee paid the full option price and received a deed from the optionors. The payment was made under protest and with notice to the grantors that the grantee did not thereby waive his right to have credited on the option price the amount received from the Commonwealth. Subsequently the optionee assigned all of his right and interest in the matter to the plaintiff herein. Plaintiff's bill in equity asks that defendants be directed to account to plaintiff for the sum of $2,000, received by them as land damages, the account to show what portion thereof has been expended in grading or in otherwise restoring or improving the property.

Defendants filed preliminary objections to the bill in equity, setting forth that the bill discloses no cause of action against defendants.

The Pennsylvania courts have not passed upon the exact question here presented. However, in Cullen & Vaughn Co. v. The Bender Co., 122 Ohio 82, 170 N. E. 633, exactly similar facts were involved, and the court there held that a lessee of land in possession under a lease for a term of years, which contains a stipulation that the lessee may purchase the fee at any time during the term of the lease for a sum stated, creates in the lessee an interest which inheres in the land from the date of the execution and delivery of the lease, and if, before the exercise of such option by the lessee, a portion of the land is appropriated for public use, for which the lessor receives compensation, the lessee, on executing the option, will be entitled to credit for the amount of such compensation against the stipulated purchase price; and that, if such credit is refused and the lessee is required to pay the full purchase price, a suit may thereafter be maintained by the optionee against the optionor to recover the same. The decision in Phoenixville, Valley Forge & Strafford Electric Railway Company's Appeal, 70 Pa. Superior Ct. 391, indicates that our courts would reach the same conclusion on the facts herein presented. In that case the owners of land had executed to appellant an option to purchase for $3,975. Thereafter, in a condemnation proceeding, viewers were appointed and awarded the entire damages to the optionors, rejecting the claim of the optionees. On appeal the Superior Court pointed out that the court below was of the opinion that appellant, as optionee, had no interest in the land at the time it was taken by the Commonwealth, and that hence appellant was not entitled to any part of the damages. The Superior Court, at page 395, said:

"We are unable to concur in the conclusion reached by the court below. One who under a properly executed agreement has an option to purchase land does not hold the lands, nor even an absolute agreement that he shall have the lands conveyed to him, but he

does get something of value, that is, the right to call for a conveyance of the lands if he elects to purchase in the manner specified. The owner parts with his right to sell the lands except to the second party, for a limited period. It is a unilateral agreement, containing the terms and conditions upon which the optionor agrees to sell and convey his land, not yet ripened into an absolute contract to sell and convey on one side and to purchase and pay on the other. Such a contract is binding on the land owner from the date of its execution, and becomes an absolute contract of sale binding on both parties, if the election to purchase is made in accordance with its provisions: . . . The appellant in this case exercised its option within the time required by the contract. . . . The right of the optionee is a substantial interest in land which can be conveyed to a vendee, and when the option is exercised according to the terms of the contract, the purchaser's equitable title, as between the parties, reverts back to the date of the original agreement: . . . Applying these principles to the facts in this case, we are led to the conclusion that [the optionors] are entitled to receive $3,975 out of the amount found by the viewers as the damages in this case, and that the appellant is entitled to the balance of that fund."

And now, June 2, 1942, the preliminary objections are hereby dismissed.